UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERZOD ASLAMOV, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-4299 |
| | § | |
| WARDEN BRYAN UHLS, *et al.* | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Sherzod Aslamov, an immigrant detainee, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. 1). Aslamov is in custody at the Joe Corley Processing Center in Conroe, Texas, and argues that his arrest, detention, and transfer out of New York are unlawful. The federal respondents, officials of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE), filed a motion for summary judgment (Dkt. 7) and seek denial of the petition. Aslamov responded (Dkt. 10) and the respondent replied (Dkt. 11). Having reviewed the petition, the briefing and exhibits, the applicable law, and all matters of record, the Court concludes that the respondents' motion for summary judgment should be **denied** and that a hearing is necessary. The Court's reasons are explained below.

## I.   BACKGROUND

Aslamov is a citizen of Uzbekistan. His petition states that in November 2021, he arrived in the United States by foot at Yuma, Arizona, with his wife and two minor children, then five years old and 19 months old. On November 17, 2021, authorities

released Aslamov and his family on their own recognizance to travel to Brooklyn, New York, and reunite with his sister-in-law, a United States citizen, on humanitarian grounds. Aslamov states that he sought permission at Yuma to apply for political asylum and withholding of removal, and that a collateral issue regarding his asylum claim was pending before the Second Circuit Court of Appeals when he filed his petition (Dkt. 1). The respondent does not dispute these facts. *See* Dkt. 7-2 (Sworn Declaration of Deportation Officer Tierra D. Dixon).

Aslamov states that ICE placed him under an order of supervision that required to him appear periodically, and that he complied without fail. On November 15, 2024, an immigration judge ordered that Aslamov be removed to Uzbekistan (Dkt. 7-1). On June 3, 2025, when he appeared to immigration authorities in New York City, the authorities arrested and detained him. That same day, authorities served him with a Warning for Failure to Depart (Form I-229(a)) and instruction sheets regarding his assistance with his removal from the United States (Dkt. 7-2). On June 7, ICE transferred the petitioner to the Houston-IAH Secure Adult Detention Facility. On June 13, authorities transferred him to a detention facility in Limestone, Texas. (Dkt. 1; Dkt. 7-2, at 3-4).

On August 6, 2025, the Board of Immigration Appeals (BIA) entered an order dismissing as untimely Aslamov's appeal from the immigration judge's decision ordering his removal (Dkt. 7-3). The BIA's decision stated, "[t]he Immigration Judge's decision is therefore now final" (Dkt. 7-3, at 4).

On August 26, 2025, authorities transferred Aslamov to the Joe Corley Processing Center in Conroe.

The petitioner claims that his arrest and transfer out of the Area of Responsibility (AOR) for New York, and away from his family and his counsel, was based on officials' recent reinterpretations of long-standing DHS policy that served to minimize detainee transfers and that the respondents violated multiple policy provisions (Dkt. 1, at 9-11, 20; *see* Dkt. 1-1, at 3-14 (DHS memorandum dated Nov. 10, 2009, regarding policies and procedures for detainee transfers (Exhibit A); Dkt. 1-1, at 15-29 (ICE Policy 11022.1 dated Jan. 4, 2012, regarding detainee transfers (Exhibit B)). He requests relief for the policy violations under *U.S. ex rel. Accardi vs. Shaughnessy*, 347 U.S. 260 (1954). He also claims that in July 2025, the respondents unlawfully reinterpreted statutory provisions that govern custody and detention of non-citizens, upending a long-settled statutory scheme, in order to deny a new category of persons eligibility for release on bond. He states that this statutory reinterpretation has been applied to him despite no factual changes warranting his re-arrest since his release on parole in 2021 (Dkt. 1, at 11-20; *see* Dkt. 1-1, at 30-32 (ICE memorandum dated July 8, 2025, providing interim guidance regarding detention authority for applications for admission (Exhibit C)).

Aslamov filed his petition in this Court on September 10, 2025. He argues that his detention is unlawful and thus warrants habeas relief under 28 U.S.C. § 2241(c)(3). He brings six claims for relief: (1) his detention and unlawful transfer out of the AOR in New York violate the Due Process Clause; (2) his unlawful transfer out of the AOR in New York violates the *Accardi* doctrine and the Due Process Clause; (3) his detention without legal authority violates the Due Process Clause; (4) the respondents' reinterpretation of 8 U.S.C. § 1226(a) unlawfully deprives him of his statutory right to a bond hearing; (5) his

arrest without a warrant or probable-cause finding was unlawful under 8 U.S.C. § 1357(A)(2); and (6) his arrest without a warrant or probable-cause finding violates 8 C.F.R. § 287.8(c)(2)(ii). He requests that a writ issue for his immediate release from custody. He also requests that the respondents be ordered to show cause why the writ should not be granted, a hearing, a declaration that his detention is unlawful, and an order enjoining the respondents from further detaining him outside the AOR in New York (Dkt. 1, at 21-25).

The Court ordered the respondents to file an expedited answer (Dkt. 3). The federal respondents then filed a motion for summary judgment and argue that Aslamov is lawfully detained under 8 U.S.C. § 1231 based on a final order of removal (Dkt. 7).[1]

With his summary judgment response, the petitioner has submitted his motion for stay of removal in the United States Court of Appeals for the Second Circuit, No. 25-1957, submitted by his family of four on September 23, 2025 (Dkt. 10-1, at 2-19 (Exhibit D)). He also has submitted a Forbearance Agreement entered by the Second Circuit on October 16, 2012, No. 12-4096 (Dkt. 10-1, at 20-28 (Exhibit E)), which relies on "the Government's forbearance policy . . . assur[ing] that removal will not occur" while a petition is pending in the Second Circuit (*id.* at 27). The Agreement states that the Second Circuit "will assume that forbearance will continue while the case remains with the agency following our remand and during its return to this Court, if that should occur" and further that, "[i]n the

---

[1] The motion states that, although the warden at the Joe Corley Processing Center is the proper respondent, the federal respondents make the custodial decisions in immigration matters (Dkt. 7, at 1 n.1). The motion is filed by the federal officials named as respondents in the petition.

event that the Court and a petitioner are advised at any time that this assumption is unwarranted, the petitioner may promptly apply for a stay of removal" (*id.*).

## II.  LEGAL STANDARDS

The respondent seeks summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). A plaintiff's statements may be sufficient to demonstrate a genuine issue of material fact. *See Bourne v. Gunnels*, 921 F.3d 484, 492-93 (5th Cir. 2019). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Rather, "[s]elf-serving affidavits and declarations, like all summary judgment evidence, must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021) (cleaned up) (citing FED. R. CIV. P. 56(c)(4)).

### III. ANALYSIS

#### A. Summary Judgment

The respondents' motion for summary judgment requests that the Court deny Aslamov's habeas petition because (1) his petition is premature under *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his apprehension was lawful pursuant to a final order of removal; (3) his detention does not violate the Due Process Clause.  All of these arguments rest on the premise that Aslamov's arrest, detention, and transfer were authorized by 8 U.S.C. § 1231.

Aslamov's petition discusses three categories of immigrant detainees:  those detained under 8 U.S.C. § 1225, under 8 U.S.C. § 1226, and under 8 U.S.C. § 1231.  He argues that none of the statutory provisions authorize his mandatory detention.

In July 2025, DHS reinterpreted § 1225 and § 1226 (Dkt. 1-1, at 31-32), applying § 1225 to applicants who previously had been subject to § 1226.  District courts confronted with the reinterpretation have largely rejected it, and have addressed the proper application of § 1225(b)(2), which authorizes mandatory detention, and § 1226(a), which does not.  In

one recent case from this judicial district, the court explained the application of the two provisions:

> Two statutes principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. §§ 1225 and 1226. Under 8 U.S.C. § 1225(b)(2), otherwise referred to as the "mandatory detention statute," a noncitizen who is an applicant for admission shall be detained for a removal proceeding if the examining officer determines that the noncitizen seeking admission is not clearly and beyond a doubt entitled to be admitted. In contrast, under 8 U.S.C. § 1226, the "discretionary detention statute," a noncitizen subject to detention is entitled to procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination. The Department of Homeland Security's longstanding interpretation had been that § 1226, not § 1225, applies to noncitizens . . . who are already present in the country.

*Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *2 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) (cleaned up); *see id.* *3 (concluding that § 1226 applied to a petitioner who had resided in the United States for years when apprehended and noting widespread agreement among district courts). Aslamov argues his case falls under 8 U.S.C. § 1226(a) because he had resided in the country for nearly four years when arrested (Dkt. 1, at 16-17; Dkt. 10, at 7).

Section 1231 governs the detention and removal of "aliens ordered removed." The statute provides that, in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a).[2] It then defines the removal

---

[2] The *Zadvydas* case pertained to a non-citizen who was subject to a final order of removal. In the case, the Supreme Court construed § 1231(a)(6), which governs detention "beyond the removal period," and held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

period as beginning "on the latest of" the following:

    (i)      The date the order of removal becomes administratively final.

    (ii)     If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    (iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(b).

The respondents argue that authorities detained Aslamov based on a final order of removal and, therefore, that his detention is authorized by 8 U.S.C. § 1231.[3] They state that both parties waived appeal from the immigration judge's removal order in November 2024, which thus became final in December 2024 when the deadline to appeal expired. However, they also present the BIA's decision on August 6, 2025, which states "[t]he Immigration Judge's decision is therefore now final" (Dkt. 7-3, at 3-4; *see* Dkt. 11, at 1). Based on this documentation of finality in August 2025, at the earliest, the respondents have not shown as a matter of law that Aslamov's arrest in June 2025, and the subsequent detention and transfer, was authorized by § 1231.[4]

---

[3]     Although the summary judgment motion cites to a "Supplemental Declaration of John Linscott" in support of the respondents' position (Dkt. 7, at 5), no such declaration is attached to the motion.

[4]     Aslamov also argues that, under § 1231(b)(ii), his "removal period" does not begin until the Second Circuit rules on his pending motion for a stay and issues a final order (Dkt. 10, at 7-8). The respondents' reply argues that § 1231(b)(ii) only allows for a delay in the removal period if a court orders a stay (Dkt. 11, at 2). Based on the ruling above holding that the respondents have not sufficiently shown that a final order of removal was in effect at the time Aslamov was arrested, the Court need not address this argument.

The respondents also argue that § 1231(g) permits the Attorney General discretion to arrange for appropriate places of detention "pending removal" (Dkt. 7, at 7), and that Aslamov's argument that his transfer was improper under the Second Circuit's Forbearance Agreement fails because the agreement "does not constitute a stay" under § 1231(a)(1)(B)(ii) (Dkt. 11, at 2).[5] These arguments rely on the assumption that § 1231 authorized Aslamov's arrest in June 2025 and subsequent detention and transfer. As stated above, given the BIA order from August 2025, the respondents have not sufficiently shown that § 1231 governs this case.

## B. Hearing

Aslamov's petition alleges, and the record contains evidence, that his arrest, detention, and transfer are unlawful. For the reasons stated above, the respondents have not shown as a matter of law that § 1231 authorized their actions. The respondents also have not articulated an alternate legal basis for their actions.

The parties are **ORDERED** to appear for a hearing by Zoom, which the Court will set by separate order, to address the next stage of this habeas litigation. The petitioner's counsel will have an opportunity to propose specific remedies, including proposed details of release from custody, transit to New York, and/or other remedies. The Government will have an opportunity to respond to the petitioner's proposals.

The parties are instructed to confer before the hearing to identify any areas of agreement between them.

---

[5] The respondents do not join issue on the petitioner's argument that the policy violations connected to his transfer out of New York are correctible under *Accardi*.

## IV. CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Dkt. 7) is **DENIED.**

2. The parties are **ORDERED** to appear at a hearing by Zoom to discuss the next stage of this habeas litigation. The Court will issue a separate order setting a hearing. The parties are **INSTRUCTED** to confer before the hearing and to be prepared to discuss the issues identified above and any other issues requiring the Court's attention.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on __October 22__, 2025.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE